## In re SUNDERLAND.
### Patent Appeal No. 3165.

Court of Customs and Patent Appeals.

Jan. 22, 1934.

Cleon J. Sawyer, of New York City (Joseph W. Hazell, of New York City, of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Review is here sought of the decision of the Board of Appeals of the United States Patent Office affirming the holding of the Examiner that certain claims of appellant's application, entitled "Wire Rope and Method of Making the Same," are not patentable over the prior art cited.

Five claims embodying a special feature were allowed, and, of the thirteen claims brought originally by appeal to this court, appellant withdrew Nos. 1, 2, and 14 to 18, inclusive, and the appeal as to them is dismissed. So there are before us only six claims. Two of these six are method claims, and the other four are product claims. Nos. 4 and 8 appear to be fairly representative, and are here quoted:

"4. The method of constructing a wire rope which comprises forming strands by laying a plurality of unformed wires about a core, forming a plurality of wires into helices and laying said helically formed wires about said unformed wires, and laying up helically a plurality of strands so formed into a rope."

"8. A wire rope strand construction comprising a plurality of wires laid about a central core without previously forming them into helices and a plurality of wires laid about said unformed wires and helically formed before laying them into the strand."

The complete rope which is covered by claims Nos. 4, 5, 11, and 12 is composed of strands, laid up helically about a central core. Each individual strand, covered specifically by claims Nos. 8 and 9, has its core, and about this core there are first laid inner wires not previously formed into helices, and upon these inner wires there are then laid other wires which have been previously formed into helices, the result of such formation being a straight strand.

The references cited are: Moxham, 337,-

513, March 9, 1886. Moxham, 362,649, May 10, 1887. Roebling, 1,260,582, March 26, 1918.

The second Moxham patent is apparently a division of the application filed in connection with the first, the drawings being the same in both. Moxham discloses in one of his figures a cable which has two series of strands, one of solid wire, which, by another figure, is shown to be coiled and twisted before being laid, and the other series is made up of "laid-up strands of fine wires of ordinary construction."

The patent to Roebling is for wire rope, and, as stated by the brief of appellant, "is cited only to show that it is old to lay up strands helically to form a wire rope, as to which there is no question."

Claims 8 and 9, relating specifically to the individual strands, were rejected as presenting nothing inventive over Moxham, and the other claims, relating to the complete rope, composed of the numerous strands laid helically upon or about the central core, were rejected on the same references, in view of Roebling's teachings as to the laying up helically of a plurality of strands.

In other words, it was held, in effect, that, since the strands themselves are not patentable over Moxham, there was no invention in applying the Roebling procedure to the making of the complete rope.

In its decision the Board of Appeals said: "This application discloses a wire rope so constructed that it will readjust its condition to compensate for changes in speed, tension and different diameter pulleys over which it travels and at the same time will prevent inequalities in the rope from traveling along its length and concentrating at certain points."

Appellant's brief, alluding to the foregoing quotation, says: "This is as good a statement of the invention as we can make."

It was evidently the view of the tribunals of the Patent Office that this readjustment of the rope to compensate for changes in speed, tension, etc., stated in the quotation, supra, was brought about by the looseness of the outer layer of wire in the strands, and all claims covering this feature stand allowed. The claims at issue here, however, are broader, not being limited to this feature, and appellant insists that, "having made an important invention," his claims should not be limited to a detail feature, "which is only preferable and not essential to the real invention."

In contrasting the Moxham device with his own, appellant says in his brief:

"Briefly, Moxham takes the old wire rope, substitutes large solid wires for the strands of small wires to avoid the wear of the small strand wires, and then, because his large solid wires cannot be laid up helically on a core, first makes permanent helices in them and lays them together. Moxham sacrifices flexibility and adjustment to operating conditions and only prevents wear.

"Applicant retains the strands of small wires but makes these of a special combination of unformed and preformed wires, and thus secures the result of flexibility and adjustment to operating conditions while preventing travel of irregularities.

"The ideas and construction of the Moxham cable and applicant's rope are entirely different and opposed to each other."

The exact issue in the case seems to be whether the Moxham patents teach the use as a first layer of *unformed* (that is, not preformed) fine wires arranged about a flexible member, which forms the core of the individual strands, which strands in turn make up the complete rope when they are laid also about a central flexible core, as described. .

In its decision, the Board of Appeals points out instances in the Moxham specifications where he speaks of the use of "finer laid-up wires" which are of *"ordinary construction"*; also where he speaks of "strands * * * made up of *twisted* or laid-up, fine wires," and other expressions of like purport. (Italics ours.)

The Board then says: "While we do not find any positive statement in these [Moxham] patents that the fine wires forming the strands c in Fig. 6 are not preformed we believe it is clear from the fact that the wires in the strands c are described as of ordinary construction, and ordinary rope is described as formed or laid [up] or twisted fine wires such as c in Fig. 6, that Moxham used in the form shown in Fig. 6 preformed and unpreformed wires."

In view of the familiar rule that an applicant for patent is entitled to have any genuine doubt which may exist resolved in his favor, careful consideration of the proper meaning of the terms "laid-up wires," "wires of ordinary construction," and "twisted wires," as used in the Moxham specification, becomes important.

We find in the specification of Moxham's first patent (which, it may be stated, relates more to the formation of a cable as a whole

than it does to the formation of the individual strands which compose it) where, in describing his method, it is said: "Each individual wire is first coiled around a mandrel of suitable form and diameter, or otherwise coiled or twisted by any suitable machinery to a given pitch. This pitch should be slightly less than that which the wire will assume when laid up in the cable, and the internal diameter of such coil also should be smaller than that of the core to be used in the cable when a core is used. These coiled or helical wires are then (each series where more than one series is used) laid up together or around or over the core of the cable under slight tension. By this special construction the wires are first coiled or twisted separately instead of together, and then laid to each other when the cable is being made. * * * "

There are different kinds of "mandrels." A definition of the word given in Webster's New International Dictionary is: "3. Metal working, etc. A piece of steel, usually long and narrow and having any of various cross sections; used as a core around which metal or other material may be cast, molded, forged, bent, or otherwise shaped. Cf. Flexible Mandrel."

The same authority defines "flexible mandrel" in the following terms: "Mech., a helical spring inserted in a tube to be bent to preserve its circular section."

Whether, in the last quotation from the Moxham specification, supra, he meant to teach the use, as a core, of a piece of steel, or the use of a flexible mandrel, is not specifically stated. If the former, and the piece of steel is merely used for preforming the wires, being removed before such formation is laid over the core of the cable, then the mandrel is but the means chosen for such preforming, and Moxham does use preformed wires, and only preformed wires, so far as this particular part of the specification

reveals. If the latter—that is, a flexible mandrel—is meant, then the mandrel is the unit with which Moxham begins, and obviously it is composed only of preformed wires.

It seems to us that the recitals immediately above quoted strongly indicate that Moxham proposed the use of only pre-formed wires, and, in view of the uncertainty which arises from the different expressions in the several specifications, we hesitate to construe the phrases, "laid-up wires," "wires of ordinary construction," and "twisted * * * fine wires," as used by Moxham to mean the same thing as is meant by the phrase "unformed wires" as used by appellant.

Appellant distinctly describes the element of unformed wires and definitely claims it.

■ We are of the opinion that he is entitled to have the rule as to doubt applied, and that the claims Nos. 8 and 9 for the strand construction should be allowed.

Also it seems logical that the product claims for the rope as a whole, that is, Nos. 11 and 12, should be granted, since the complete rope is made up of the specific strands held to be patentable.

The method claims, Nos. 4 and 5, relate, not to the process of forming the individual strands, but to the process of forming the complete rope from those strands. As a general process of forming wire rope, it is conceded that appellant's method is virtually the same as that taught by Roebling, but, since these claims contain the limitation of use in part of unformed wires, no sound reason is seen why these should not also be granted.

The appeal is dismissed as to claims Nos. 1, 2, and 14 to 18, inclusive, and reversed as to all others.